**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS LUCE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 21 CV 1250 |
| v. | ) | Judge Mary M. Rowland |
| | ) | |
| BRENDAN KELLY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFFS' COMPLAINT**

1. In Illinois, the ability to exercise one's Second Amendment right to keep and bear arms and bear arms in public for self-defense is conditioned on first obtaining a concealed carry license ("CCL"). 430 ILCS 66/1, et seq. Without a CCL, a person may not carry a concealed functional firearm for self-defense purposes in public; violation constitutes a Class 4 felony; a repeated offense is a Class 2 felony. 720 ILCS 5/24-1.6(d).

**ANSWER: Defendants admit that under 430 ILCS 66/1 et seq., an individual in Illinois must obtain a concealed carry license in order to carry a firearm in public. Defendants further admit that pursuant to 720 ILCS 5/24-1.6(d), carrying a functional and accessible firearm in public in Illinois without a CCL constitutes a Class 4 felony, and that a second or subsequent offense constitutes a Class 2 felony. Defendants deny any remaining allegations set forth in Paragraph 1.**

2. The Illinois Legislature imposed this statutory scheme that requires a person to submit an application, pay a fee, pass a background check, and undergo 16 hours of training (classroom and live range proficiency) in order to receive a CCL so that the person may carry a concealed firearm for self-defense in public. Unless and until the applicant actually obtains and holds in his or her hand the piece of plastic that is the CCL, the person cannot exercise the fundamental Second Amendment right to carry a concealed firearm in public for self-defense.

**ANSWER: Defendants admit that pursuant to Illinois' statutory scheme, unless and until an individual holds a valid CCL, he or she may not legally carry a concealed firearm in public. Defendants deny all remaining allegations set forth in Paragraph 2.**

3. Undoubtedly recognizing the constitutional imposition the CCL scheme presents, the Illinois legislature required the Illinois State Police ("ISP") to either approve or deny an

1

application for a CCL card within either 90 days (if the applicant submits fingerprints with the application) (430 ILCS 66/10(e)) or within 120 days (if the applicant does not submit fingerprints). 430 ILCS 66/30(b)(8). But despite this statutory command, the ISP commonly does not approve qualified residents' CCL applications within 90 or 120 days.

**ANSWER: Defendants admit that pursuant to statute the Illinois State Police must either approve or deny an application for a CCL within either 90 or 120 days. Defendants deny all remaining allegations set forth in Paragraph 3.**

4. Instead, the ISP leaves applicants in limbo for months, with residents commonly waiting many additional months to receive a CCL. That has been true for some time, and it has only become worse as applications for CCLs have surged in the past twelve months.

**ANSWER: Defendants deny the allegations set forth in Paragraph 4.**

5. And the consequences for delay are neither abstract nor a mere inconvenience; they are a matter of life and death. Sadly, in similar situations, where the government bureaucracy legislatively empowered to act as a Second Amendment gatekeeper has dithered in processing applications, there have been fatal results.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5.**

6. The Illinois residents who are Plaintiffs in this lawsuit have all been waiting longer than 90 or 120 days to receive the CCLs for which they have applied. Many members of the organizational Plaintiffs in this case, the Illinois State Rifle Association ("ISRA") and the Second Amendment Foundation ("SAF"), have also been waiting longer than the required 90 or 120 days to receive the CCLs for which they have applied.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to the allegations set forth in Paragraph 6 regarding those individuals. To the extent an answer is required, Defendants deny the allegations in the first sentence of Paragraph 6, because all individuals formerly named as Plaintiffs in this lawsuit have received their CCLs. With respect to the allegations set forth in the second sentence of Paragraph 6, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in that sentence.**

7. Illinois cannot justify completely and indefinitely denying its residents their fundamental Second Amendment right to carry a functional concealed firearm in public to defend their lives and families while they wait for the ISP to approve their CCL applications. Simply put, if the State of Illinois is going to condition the exercise of a fundamental right on the

receipt of a license, then the process for issuing that license cannot be defective to the point of being near-inoperable.

**ANSWER: Defendants deny the allegations set forth in Paragraph 7.**

8. Plaintiffs have therefore brought this lawsuit to protect their Second Amendment rights, and, in the case of Plaintiffs ISRA and SAF, their members' Second Amendment rights. They ask this Court to (1) declare that the ISP's failure to issue CCLs to qualified applicants within the required 90 or 120 days violates the Second and Fourteenth Amendments, (2) order the state to immediately issue CCLs to the individual Plaintiffs and to members of ISRA and SAF who applied for CCLs more than the required 90 or 120 days ago, who have not had their applications approved or denied, or, in the alternative, (3) order the state to immediately process the CCL applications of the individual Plaintiffs and of the members of ISRA and SAF who applied for CCLs more than 90 or 120 days ago, who have not had their applications approved or denied, as well as implement a system whereby the applicants for CCLs in Illinois have their applications processed in a manner that is compliant with Illinois law.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. Defendants admit that the remaining organizational Plaintiffs, ISRA and SAF, purportedly bring this lawsuit to protect their members' Second Amendment rights, but deny any liability or wrongdoing. The remainder of Paragraph 8 sets forth no allegations directed toward Defendants, and as such no answer is provided.**

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, and 42 U.S.C. § 1983 because this action seeks to redress the Defendants' deprivation, under color of state law, of rights protected by the U.S. Constitution.

**ANSWER: Defendants admit that this Court has jurisdiction over this matter, but deny that they have violated Plaintiffs' rights.**

10. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this action are harming Plaintiffs in this District.

**ANSWER: Defendants admit that venue properly lies in the Northern District of Illinois, and deny all remaining allegations of Paragraph 10.**

## PARTIES

11. Plaintiff Nicholas A. Luce is an individual over 21 years of age who resides in the City of Chicago in Cook County, Illinois. Mr. Robinson has a B.S. in aviation flight management from Lewis University in Romeoville, Illinois. He is currently employed as an air traffic controller in Chicago.

**ANSWER: All individuals, including Mr. Luce, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 11. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 11.**

12. Plaintiff Joseph R. Stacho, III, is an individual over 21 years of age who resides in the City of Naperville in DuPage County, Illinois. He has a B.S. in finance and economics from Marquette University, and a law degree from John Marshall Law School. He is currently employed as a business law attorney in a law firm in Naperville.

**ANSWER: All individuals, including Mr. Stacho, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 12. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12.**

13. Plaintiff David M. Rice is an individual over 21 years of age who resides in the City of Chicago in Cook County, Illinois. He has a Bachelor's degree in business from University of Michigan. He is married and has two children. He is employed as a bond trader at an investment firm in Chicago.

**ANSWER: All individuals, including Mr. Rice, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 13. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13.**

14. Plaintiff Jerry J. Robinson is an individual over 21 years of age who resides in the Village of Romeoville in Will County, Illinois. Mr. Robinson is employed as a courier for an international package delivery company in Chicago, Illinois. He has two grown children.

**ANSWER: All individuals, including Mr. Robinson, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 14. To the extent an answer is required,**

**Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14.**

15. The individual Plaintiffs are concerned about being able to properly exercise their right to armed self-defense in public, especially given recent events and the current spate of car-jackings that have plagued Chicago and the collar counties.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 15. To the extent an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15.**

16. Plaintiff ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has more than 26,000 members and supporters in Illinois, and many members outside the State of Illinois. The organizational purposes of ISRA include securing the constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

**ANSWER: Defendants admit that ISRA is a non-profit membership organization that brings this action on behalf of its members, and further state that pursuant to the Court's January 24, 2022 order, ISRA does not have standing to pursue claims on its own behalf. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 16.**

17. ISRA has members who are Illinois residents and have applied for Illinois CCLs but have neither received them, nor had their applications denied for cause, within the 90 or 120 days as state law requires.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17.**

18. These ISRA members would carry concealed and functional firearms in public for self-defense in Illinois, but refrain from doing so because they do not wish to be prosecuted for carrying a concealed firearm in public without a CCL.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18.**

19. Plaintiff SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's

> membership includes residents of Illinois. SAF has over 650,000 members and supporters nationwide. The organizational purposes of SAF include education, research, publishing, and legal action focusing on the constitutional right privately to own and possess firearms. SAF brings this action on behalf of itself and its members.

**ANSWER: Defendants admit that SAF is a non-profit membership organization that brings this action on behalf of its members, and further state that pursuant to the Court's January 24, 2022 order, SAF does not have standing to pursue claims on its own behalf. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 19.**

> 20. SAF has members who are Illinois residents and have applied for Illinois CCLs but have neither received them, nor had their applications denied for cause, within 90 or 120 days as state law requires.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20.**

> 21. These SAF members would carry concealed and functional firearms in public for self-defense in Illinois, but refrain from doing so because they do not wish to be prosecuted for carrying a concealed firearm in public without a CCL.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21.**

> 22. The individual plaintiffs are members of both ISRA and SAF.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 22. To the extent that an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22.**

> 23. Defendant Brendan F. Kelly is the Director of the Illinois State Police ("ISP").

**ANSWER: Defendants admit the allegations set forth in Paragraph 23.**

> 24. The ISP is a department of the executive branch of the State of Illinois created by statute, 20 ILCS 2605/2605-1, et seq. Under the Illinois Firearm Concealed Carry Act, 430 ILCS 66/1, et seq. ("Act"), the ISP is charged with administering the system for consideration of applications for granting, denying, and/or revoking individual licenses to carry concealed firearms under the Act.

**ANSWER: Defendants admit the allegations set forth in Paragraph 24.**

25. Defendant Kelly is the ISP employee directly responsible for the administration of the Act. As such, Defendant Kelly is responsible for the ISP's failure to issue CCLs to Plaintiffs within the required 90 or 120 days of receiving their applications. He is sued in his official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

**ANSWER: Defendants admit that as the Director of ISP, Defendant Kelly possesses general supervisory authority within the ISP, but deny that Defendant Kelly is directly involved in the day-to-day administration of the Illinois Firearm Concealed Carry Act. Defendants admit that Defendant Kelly is sued in his official capacity through this lawsuit, but deny all remaining allegations set forth in Paragraph 25.**

26. Jarod Ingebrigtsen is the Bureau Chief of the Firearm Services Bureau ("FSB"), a division of the ISP established to administer programs relating to firearms delegated to the ISP, including under the Act. Having the power to make decisions in these programs, the FSB is an administrative agency of the State of Illinois as defined by 735 ILCS 5/3-101.

**ANSWER: Defendants deny that Jarod Ingebrigsten currently holds the position of Bureau Chief of the FSB.[1] Defendants admit the remaining allegations set forth in Paragraph 26.**

27. As Bureau Chief of the FSB, Defendant Ingebrigtsen is directly responsible for the ISP's failure to issue CCLs to Plaintiffs and others within the required 90 or 120 days of receiving their applications. He is sued in his official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

**ANSWER: Defendants admit that the Bureau Chief of the FSB possesses general supervisory authority within the FSB but deny that the Bureau Chief is directly involved in the day-to-day administration of the Illinois Firearm Concealed Carry Act. Defendants further deny that Jarod Ingebrigsten currently holds the position of Bureau Chief of the FSB. Defendants admit that Gregory Hacker, as the current Bureau Chief of the FSB, is sued in his official capacity through this lawsuit, but deny all remaining allegations set forth in Paragraph 27.**

---

[1] Pursuant to Federal Rule of Civil Procedure 43(c)(2), Captain Gregory Hacker was automatically substituted as a Defendant when he assumed the role of Bureau Chief of the Firearms Services Bureau from Jarod Ingebrigsten.

## FACTS

Illinois's Concealed Carry License Requirement

28. Under Illinois law, an individual must obtain a CCL to be allowed to carry a concealed functional firearm in public for self-defense. 430 ILCS 66/20(g); 720 ILCS 5/24-1.6(a)(3)(A-5), (B-5).

**ANSWER: Defendants admit the allegations set forth in Paragraph 28.**

29. 430 ILCS 66/10 states, in relevant part:

   (g) A licensee shall possess a license at all times the licensee carries a concealed firearm except:
   (1) when the licensee is carrying or possessing a concealed firearm on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission;
   (2) when the person is authorized to carry a firearm under Section 24-2 of the Criminal Code of 2012, except subsection (a-5) of that Section; or
   (3) when the handgun is broken down in a non-functioning state, is not immediately accessible, or is unloaded and enclosed in a case.

**ANSWER: Defendants admit that Paragraph 29 accurately sets forth a portion of 430 ILCS 66/10.**

30. Illinois also provides that "[a]n application for a [concealed carry] license submitted to the Department [of State Police] that contains all the information and materials required by this Act, including the requisite fee, shall be deemed completed. Except as otherwise provided in this Act, no later than 90 days after receipt of a completed application, the Department shall issue or deny the applicant a license." 430 ILCS 66/10(e).

**ANSWER: Defendants admit that Paragraph 30 accurately quotes 430 ILCS 66/10(e).**

31. The ISP shall approve a CCL application unless a disqualifying factor listed in the Act (such as a conviction for a misdemeanor involving the use or threat of physical force or violence to any person within the 5 years preceding the date of the license application) applies. See 430 ILCS 66/10, 66/25(3-5).

**ANSWER: Defendants admit that Paragraph 31 accurately sets forth a portion of 430 ILCS 66/10, 66/25(3-5).**

Illinois's Failure to Timely Issue CCLs

32. Despite the statutory requirement, the ISP often does not approve or deny new CCL applications within 90 or 120 days.

**ANSWER: Defendants admit that ISP has, in some instances, not approved or denied a new CCL application within 90 or 120 days. Defendants deny all remaining allegations set forth in Paragraph 32.**

33. Contrary to its statutory duties, the ISP has commonly taken much longer than 90 or 120 days to approve qualified applicants' CCL applications. *See Samantha Chatman IL FOID card, concealed carry license delays leave residents on edge as carjacking cases surge*, ABC Chicago, February 16, 2021.

**ANSWER: Defendants admit that ISP has, in some instances, taken in excess of 90 or 120 days to approve qualified applicants' CCL applications. Defendants deny all remaining allegations set forth in Paragraph 33.**

34. In 2020, violence, looting, and crime have led to a surge in applications for CCLs, and the ISP is still failing to issue CCLs within 90 or 120 days as state law requires.

**ANSWER: Defendants admit that there was an increase in CCL applications in 2020. Defendants further admit that ISP has, in some instances, taken in excess of 90 or 120 days to issue CCLs. Defendants deny all remaining allegations set forth in Paragraph 34.**

35. Plaintiff Nicholas A. Luce applied for a CCL on September 12, 2020. He paid an extra $80.00 fee and submitted his fingerprints in order to expedite his application and have it processed within 90 days instead of 120 days. The ISP still has not approved or denied his application.

**ANSWER: All individuals, including Mr. Luce, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 35. To the extent an answer is required, Defendants admit that Luce submitted a CCL application on September 12, 2020, and that he paid an $80 fee and submitted his fingerprints in order to expedite his application. Defendants deny all remaining allegations set forth in Paragraph 35.**

36. Plaintiff Joseph R. Stacho, III applied for a CCL on September 18, 2020. He paid an extra $80.00 fee and submitted his fingerprints in order to expedite his application and have it processed within 90 days instead of 120 days. The ISP still has not approved or denied his application.

**ANSWER: All individuals, including Mr. Stacho, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 36. To the extent an answer is required, Defendants admit that Stacho submitted a CCL application on September 18, 2020, and that he paid an $80 fee and submitted his fingerprints in order to expedite his application. Defendants deny all remaining allegations set forth in Paragraph 36.**

37. Plaintiff David M. Rice applied for a CCL on October 20, 2020. The ISP still has not approved or denied his application.

**ANSWER: All individuals, including Mr. Rice, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 37. To the extent an answer is required, Defendants admit that Rice submitted a CCL application on October 20, 2020. Defendants deny all remaining allegations set forth in Paragraph 37.**

38. Plaintiff Jerry J. Robinson applied for a CCL on February 13, 2020. The ISP still has not approved or denied his application.

**ANSWER: All individuals, including Mr. Robinson, who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 38. To the extent an answer is required, Defendants admit that Robinson submitted a CCL application on February 13, 2020. Defendants deny all remaining allegations set forth in Paragraph 38.**

39. None of the individual Plaintiffs is prohibited from obtaining a CCL under the disqualifying factors listed in 430 ILCS 66/25.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 39. To the extent that an answer is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39.**

40. For a significant amount of time, the ISRA has received reports from its members and supporters of CCL application delays by the Defendants and the ISP.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40.**

41. For a significant amount of time, SAF has received reports from its Illinois members and supporters of CCL application delays by the Defendants and the ISP.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41.**

42. One cause of Defendants' failure to timely process CCL applications is the State of Illinois's persistent refusal to provide the resources necessary to do so.

**ANSWER: Defendants deny the allegations set forth in Paragraph 42.**

43. On September 10, 2019, the State of Illinois Commission on Government Forecasting and Accountability reported that, in the preceding five years, the ISP had more than $29.5 million swept or transferred away from the State Police Firearms Services Fund, the State Police Operations Assistance Fund, and the State Police Services Fund and into other accounts.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43.**

44. That money was to be used for three purposes: background checks for firearm-related services, concealed carry licensing, and administration of the FOID Card Act.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44.**

45. Instead, the more than $29.5 million has been subject to interfund transfers, which are ostensibly to be repaid, but which have not been, or has been swept into other accounts with no obligation to reimburse the funds at all.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45.**

46. The effect of this has been a systematic slowdown and sometimes halt of the processing of CCL applications under the Act. Even before the state lockdown in response to COVID-19, applicants commonly made many attempts to reach someone at the ISP by phone with no success. In the unlikely event that a person would answer, the applicant is usually told only that his or her case is under review.

**ANSWER: Defendants deny the allegations set forth in the first sentence of Paragraph 46. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the remainder of Paragraph 46.**

*Injury to Plaintiff*

47. Per 720 ILCS 5/24-1.6(a), a person commits the offense of aggravated unlawful use of a weapon when he or she knowingly possesses a loaded and concealed firearm in public without a CCL. 720 ILCS 5/24-1.6(a)(3)(A-5), (B-5). The offense is classified as a Class 4 felony for a first offense, and a Class 2 felony for any subsequent offense.

**ANSWER: Defendants admit that Paragraph 47 accurately summarizes 720 ILCS 5/24-1.6(a)(3)(A-5), (B-5).**

48. The individual Plaintiffs are each injured by the Defendants' failure to issue them CCLs within 90 or 120 days of receiving their respective applications because this failure has completely deprived them of their right to keep and bear arms and to use a firearm to

defend their lives and families in public. But for the Defendants' failure to issue them CCLs, and the criminal penalties listed above, the Plaintiffs would immediately obtain and possess firearms in Illinois.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided to Paragraph 48. To the extent that a response is required, Defendants deny the allegations of Paragraph 48.**

49. Members of Plaintiffs ISRA and SAF who have applied for, but not timely received, CCLs are injured by the Defendants' failure to issue CCLs within 90 or 120 days of receiving their applications, because this failure has completely deprived them of their right to keep and bear concealed firearms and to use a firearm to defend their lives and families in public. But for the Defendants' failure to issue them CCLs, and the criminal penalties listed above, these individuals would immediately possess concealed firearms in public for self-defense in Illinois.

**ANSWER: Defendants deny that the ISP's administration of the Illinois Firearm Concealed Carry Act has caused injury to anyone. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 49.**

50. If not permanently enjoined by this Court, Defendants and their agents, representatives, and employees will continue to fail to timely approve CCL applications, which deprive the individual Plaintiffs and the members of Plaintiffs ISRA and SAF of their constitutionally protected right to keep and bear concealed firearms in public for self-defense. Thus, Defendants' challenged practices are now causing and will continue to cause Plaintiffs to suffer irreparable injury, including but not limited to deprivation of their right to keep and bear arms. Plaintiffs have no plain, speedy, and adequate remedy at law for their injuries.

**ANSWER: Defendants deny the allegations set forth in Paragraph 50.**

51. An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties. Plaintiffs contend, pursuant to 42 U.S.C. § 1983, that Defendants' challenged practices violate the Second and Fourteenth Amendments.

**ANSWER: Defendants admit that Plaintiffs assert violations of their rights under the Second and Fourteenth Amendments through this lawsuit, but deny any wrongdoing or liability and deny that the remaining Plaintiff have standing to bring the instant claims. Defendants deny all remaining allegations set forth in Paragraph 51.**

## COUNT I: VIOLATION OF RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST. AMENDS. II AND XIV, 42 U.S.C. § 1983

52. Plaintiffs incorporate and reallege all of the foregoing Paragraphs as if fully restated herein.

**ANSWER: Defendants incorporate their answers to the foregoing paragraphs as though fully restated herein.**

53. The Second Amendment provides:

    A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

**ANSWER: Defendants admit that Paragraph 53 accurately quotes the Second Amendment.**

54. The Second Amendment is "fully applicable against the States." *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

**ANSWER: Defendants admit that the Second Amendment is fully applicable against the States.**

55. The right to keep and bear arms protected by the Second Amendment is a fundamental individual right and includes both the right to possess a firearm for "defense of hearth and home," *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), as well as the right to carry a firearm for self-defense outside the home, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

**ANSWER: Defendants admit that the cases cited in Paragraph 55 support the propositions set forth in Paragraph 55.**

56. Defendants' failure to comply with their statutory obligation and issue CCLs to Plaintiffs Luce, Stacho, Rice, and Robinson, and to the affected members of Plaintiffs ISRA and SAF, in accordance with the 90 or 120-day legislative command, has completely denied those individuals their constitutionally guaranteed rights to keep and bear arms for self-defense.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Answering further, Defendants deny all remaining allegations set forth in Paragraph 56.**

57. The Defendants, under color of state law, have deprived and are depriving Plaintiffs Luce, Stacho, Rice, and Robinson, and the affected members of Plaintiffs ISRA and SAF, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. These individuals were and are thus injured in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of their rights.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Defendants deny all remaining allegations set forth in Paragraph 57.**

## COUNT II: VIOLATION OF RIGHT TO PROCEDURAL DUE PROCESS
## U.S. CONST. AMEND. XIV, 42 U.S.C. §1983

58. Plaintiffs incorporate and reallege all of the foregoing Paragraphs as if fully restated herein.

**ANSWER: Defendants incorporate their answers to the foregoing paragraphs as though fully restated herein.**

59. By failing or refusing to timely process their CCL applications, the Defendants have denied Plaintiffs Luce, Stacho, Rice, and Robinson, and the affected members of Plaintiffs ISRA and SAF, their constitutionally guaranteed rights to an objective, prompt, and appealable procedure.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Defendants deny all remaining allegations set forth in Paragraph 59.**

60. Whenever the government requires individuals to obtain a license or permit to exercise a right—especially a fundamental constitutional right—due process demands that: (a) the burden of proof be allocated to the state, not the individual; (b) the applicant be informed of a specific and brief period within which the government will either grant or deny the license or permit; and (c) the licensing or permitting requirement provide a mechanism for prompt judicial review in the event of the erroneous denial of a license. *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958).

**ANSWER: Defendants admit that the case cited in Paragraph 60 supports the proposition asserted in Paragraph 60.**

61. Defendants' persistent failure to comply with their statutory obligation and issue CCLs in accordance with the 90 or 120-day legislative command has violated and, unless enjoined by this Court, will continue to violate, the due process rights of Plaintiffs Luce, Stacho, Rice, and Robinson, and the affected members of Plaintiffs ISRA and SAF.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Defendants deny all remaining allegations set forth in Paragraph 61.**

62. Plaintiffs Luce, Stacho, Rice, and Robinson, and the affected members of Plaintiffs ISRA and SAF therefore have been and are being damaged in violation of 42 U.S.C. § 1983.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Answering further, Defendants deny all remaining allegations set forth in Paragraph 62.**

63. Plaintiffs Luce, Stacho, Rice, and Robinson, and the affected members of Plaintiffs ISRA and SAF therefore are entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of their rights.

**ANSWER: All individuals who were originally named as Plaintiffs in this lawsuit were dismissed pursuant to the Court's January 24, 2022 order. As such, no answer is provided with respect to those individuals. Defendants deny all remaining allegations set forth in Paragraph 63.**

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and:

A. Declare that Defendants' failure to approve or deny for cause applicants' concealed carry license applications within the required 90 or 120 days violates the Second Amendment;

B. Declare that Defendants have unjustifiably denied Plaintiffs Luce, Stacho, Rice, and Robinson, and the organizational Plaintiffs' affected members, their Second Amendment right to keep and bear arms for self-defense;

C. Declare the Defendants' failure to approve or deny for cause qualified applicants' CCL applications within 30 days violates the Due Process Clause of the Fourteenth Amendment;

D. Declare that Defendants have unjustifiably denied Plaintiffs Luce, Stacho, Rice, and Robinson, and the organizational Plaintiffs' affected members, their Fourteenth Amendment right to due process;

E. Enter an injunction ordering Defendants to immediately issue concealed carry licenses to Plaintiffs Luce, Stacho, Rice, and Robinson, and the organizational Plaintiffs' affected members;

F. In the alternative, if Defendants cannot issue applicants' concealed carry licenses within the required 90 or 120 days as the Act requires, enter an injunction against enforcement of the Act until at least such time as Defendants are able to so comply;

G. Award damages to Plaintiffs Luce and Stacho in the amounts of the $80.00 fee they paid in order to have the ISP conduct a criminal history records check with their fingerprints, which Luce and Stacho submitted in the vain hope of expediting their CCL applications;

H. Award Plaintiffs their attorney's fees and costs, pursuant to 42 U.S.C. § 1988; and

I. Award Plaintiffs such other and further relief as it deems just.

**ANSWER: Defendants deny that the remaining Plaintiffs are entitled to the requested relief, or to any relief whatsoever.**

**ANSWERING FURTHER, Defendants deny each and every allegation not heretofore answered.**

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request that this Court dismiss Plaintiffs' Complaint and grant any other relief that the Court deems just.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By: *s/Amanda L. Kozar*
AMANDA L. KOZAR
Assistant Attorney General
General Law Bureau
100 W. Randolph St., 13th Fl.
Chicago, Illinois 60601
(312) 814-6534
Amanda.Kozar@ilag.gov

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 22, 2022, she electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

Respectfully Submitted,

*/s/ Amanda Kozar*
Amanda Kozar